*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEAN FRANCIS MILLER,

        Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 361284
Montmorency Circuit Court
LC No. 2021-004920-FH

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant was arrested after the police received a call that he was intoxicated and driving. A jury convicted defendant of driving while intoxicated, operating without security, and operating a vehicle with a suspended license. We affirm.

## I. BACKGROUND

Defendant had known Peter McLean for 12 years when defendant drove to McLean's house and parked in the driveway. McLean noticed that defendant was alone, staggering, and smelled of alcohol. That same day, another of defendant's acquaintances, Doug Baum, saw defendant standing next to his car on the side of the road. The car was still in the same spot when Baum drove past it later, but defendant had left.

A report was made to the sheriff's department that defendant was driving while intoxicated, and Montgomery Sheriff's Sergeant Michael Brooks was dispatched to locate defendant. Sergeant Brooks found defendant at his house, and he spoke with him regarding the reports that he had been driving while intoxicated. One of Sergeant Brooks's colleagues continued the investigation, and defendant was arrested.

Defendant's blood was drawn while he was in jail, and Michigan State Police toxicology expert, Kimberly Dailey, participated in the analysis of that sample. The report indicated that defendant's blood contained .234 grams of alcohol per 100 milliliters of blood.

-1-

At trial, Dailey testified that even though she analyzed the data and prepared the toxicology report, another colleague, Tabatha House, analyzed the blood sample to produce the data. Defense counsel did not argue against the admissibility of the report, but rather argued that the report did not have any weight concerning defendant's charges because there was no evidence that defendant had been driving.

The prosecutor also called McLean as a witness, and the prosecutor asked McLean whether defendant had told him that he did not have a valid driver's license. In response, McLean said, "Yes," and the prosecutor acknowledged his response. Then, without prompting, McLean offered that he had known that defendant did not have a valid driver's license because defendant had "a bunch of drunk driver [sic], so. Sorry." Defense counsel objected to the statement, and the trial court instructed the jury to disregard the comment.

Baum was also called as a witness, and the prosecutor asked Baum to answer a question "Without going into detail about any prior record, or anything of that nature." Unprompted, Baum then offered that the only time he remembered seeing defendant sober was when defendant was incarcerated.

The prosecutor also questioned Sergeant Brooks, and he was asked how he knew defendant. Defense counsel successfully objected to the question before Sergeant Brooks could answer. The prosecutor later rephrased the question to ask Sergeant Brooks how long he had known defendant and whether he had observed defendant's mannerisms when defendant was both intoxicated and sober. Sergeant Brooks testified concerning defendant's characteristics on the day that he was dispatched, including the fact that Sergeant Brooks witnessed defendant slurring his speech and staggering while standing up. Sergeant Brooks compared these actions to when he had seen defendant intoxicated and when he had seen defendant sober.

During closing arguments, defense counsel conceded that defendant had been intoxicated on the day in question, and argued that the prosecutor did not offer any evidence that defendant was driving on that day while intoxicated. Instead, defense counsel argued that there was another witness who was driving defendant around town.

The trial court then proceeded with its instructions for the jury. In a preliminary motion, defendant moved to include the following instruction, "Every defendant has the absolute right not to testify. When you decide the case, you must not consider the fact that [he] did not testify. It must not affect your verdict in any way." The trial court, however, did not read that instruction for the jury, and instead instructed the jury that defendant was presumed innocent without having anything to do to prove his innocence.

Defendant was convicted as stated above, and defendant moved for a retrial on the grounds that the trial court did not read the instruction as requested as well as defense counsel's ineffectiveness. The trial court denied defendant's motion, and it held that there was no reasonable probability that the result would have been different if the instruction would have been read.

Defendant now appeals.

## II. ANALYSIS

-2-

## A. ALLEGED PROSECUTORIAL ERROR

Defendant first argues that the prosecutor asked improper questions of McLean, Baum, and Sergeant Brooks that elicited impermissible testimony. "The test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial "can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused." *Id*. at 63-64. Claims of prosecutorial error are reviewed "on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial." *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010).

Defendant argues that McLean's testimony, that he knew that defendant had "a bunch of drunk driver" incidents, was elicited by the prosecutor's question to McLean about his knowledge regarding defendant's driver's license status. Defendant ignores, however, that the trial court instructed the jury to disregard the testimony after defense counsel's successful objection. "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (cleaned up). Further, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial," *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995), and in this case McLean volunteered that information without a further question by the prosecutor.

Defendant next argues that Baum's testimony, that the only time he remembered seeing defendant sober was when defendant was incarcerated, was impermissible and elicited by the prosecutor's question. The prosecutor instructed Baum, however, to not go into defendant's prior record, and Baum's testimony was volunteered outside of the prosecutor's question. As stated above, this is not grounds for a mistrial. Defendant argues in the alternative that the prosecutor's preamble, instructing Baum to not offer anything of defendant's prior record, was impermissible because it presupposed the defendant had a criminal record that Baum was supposed to ignore while answering the question. As inartful as the prosecutor's question might have been, however, it did not offer any specific information about defendant's prior record.

Defendant also argues that Sergeant Brooks's testimony, regarding how he knew defendant and defendant's mannerisms when intoxicated and when sober, was impermissible. Defendant ignores, however, that Sergeant Brooks was permitted to provide his observations. Sergeant Brooks did not offer any testimony regarding defendant's prior record, and, when the prosecutor asked whether Sergeant Brooks knew defendant through his previous interactions with the police, defendant counsel successfully objected to the question before Sergeant Brooks could offer testimony about defendant's prior record.

Thus, defendant was not denied a fair trial through the prosecutor's alleged error in questioning the witnesses.

## B. RIGHT TO CONFRONTATION

Defendant argues that his Sixth Amendment right to confront witnesses was violated when House was not presented to testify about the blood report, and, thus, the blood report was improperly admitted. In this case, defendant did not object to the admission of the laboratory

report regarding his blood test during trial. Defendant later raised this issue in a motion for a new trial, which was denied. Thus, defendant did not preserve this issue for appeal because he was required to provide the trial court with an opportunity to correct the error by objecting to it at the time. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006).

Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if plain error resulted in the conviction of an innocent defendant, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (cleaned up).

Under the United States Constitution, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. The Michigan Constitution also guarantees this right. Const 1963, art 1, § 20. The central protection offered by the Confrontation Clause of the Sixth Amendment is to ensure the reliability of testimonial evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *People v Levine*, 231 Mich App 213, 219-220; 585 NW2d 770 (1998).

In this case, Dailey testified about the procedures used in determining the alcohol content of a blood sample, and she prepared and signed the laboratory report that explained defendant's blood-alcohol content. Even though Dailey analyzed the data and produced the report, it is clear that House performed the analysis on defendant's blood sample. Thus, we presume without deciding that defendant's right to confrontation was infringed when House was not provided as a witness. See *Bullcoming v New Mexico*, 564 US 647, 651-652; 131 S Ct 2705; 180 L Ed 2d 610 (2011); *People v Fackelman*, 489 Mich 515, 518-519, 532-534; 802 NW2d 552 (2011).

A defendant, however, may waive his right to confrontation. See *People v Buie*, 491 Mich 294, 306-307; 817 NW2d 33 (2012). The waiver of the right to confrontation is valid "if the decision constitutes reasonable trial strategy, which is presumed," and the "defendant does not object on the record." *Id*. at 315. In this case, defense counsel did not object to the admission of the report, and, in closing, admitted that defendant was intoxicated on the day in question. "An appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence." *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003).

Additionally, several witnesses testified that defendant was intoxicated, and there was substantial evidence without the report that defendant was intoxicated. Thus, the report was not outcome-determinative regarding defendant's intoxication, and there was no plain error here.

## C. JURY INSTRUCTION

Defendant argues that the trial court erred by not reading his requested instruction to the jury. This Court reviews de novo preserved claims of instructional error. *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009). A defendant has the right to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). Even "if an applicable instruction was not given, the defendant

-4-

bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). To obtain reversal, a defendant must show that the instructional error "undermined reliability in the verdict." *People v Cornell*, 466 Mich 335, 364; 646 NW2d 127 (2002). Reversal is thus appropriate when "it is more probable than not that the error was outcome determinative." *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017). There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

Defendant argues that the failure to provide the instruction affected the verdict because the jury was free to infer that he must have been driving because he did not, personally, offer an explanation of his innocence. Defendant ignores, however, that the trial court provided other instructions to prevent the jury from forming a negative inference from defendant's silence. The trial court instructed the jury that defendant was presumed innocent and he did not have to do anything to prove that innocence. Thus, even assuming arguendo that the trial court erred by failing to instruct the jury as requested by defendant, the instructions that were provided adequately protected defendant's right to be protected from any inference the jury may have drawn from him not testifying. When reading the jury instructions in their entirety, the lack of the requested jury instruction did not undermine the reliability of the verdict nor is it reasonably likely that it determined the outcome of the trial when considering the other evidence that was presented. *McFall*, 224 Mich App at 412.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that defense counsel provided ineffective assistance by failing to move for an exclusion of defendant's previous arrests, failing to object to the admission of his blood-sample analysis, and failing to object to the trial court's failure to provide the jury with the requested instruction. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Defendant moved earlier to remand this matter for an evidentiary hearing alleging, among other things, that defense counsel was ineffective. This Court denied the motion, so we review defendant's ineffective assistance of counsel claims for errors apparent on the record. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears a heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The performance will be deemed to

have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

Defendant's argument concerning defense counsel's failure to exclude statements about his prior arrests is misplaced. As discussed, no evidence was admitted that specified defendant's prior arrests, and the jury did not hear any testimony regarding other convictions related to defendant driving while intoxicated. This was in part attributable to defense counsel's timely and successful objections to testimony that would have otherwise specified defendant's prior convictions. Simply put, defense counsel provided effective assistance in this regard.

Defendant also argues that defense counsel should have objected to the admission of the blood-sample data that was generated by a witness who did not testify. The failure to object to inadmissible and prejudicial evidence can be ineffective assistance. *People v Ullah*, 216 Mich App 669, 685; 550 NW2d 568 (1996). In this case, however, as discussed, defense counsel argued that the report concerning defendant's blood-alcohol level was not relevant because defendant was not driving. Further, given the testimonial evidence presented in this case, it was reasonable for defense counsel not to pursue a defense denying defendant's intoxication. There is a strong presumption that defense counsel was effective, *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and defendant has not shown that defense counsel's strategy—to admit his intoxication and deny that there was sufficient evidence that he was driving—was anything but sound trial strategy, *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Further, neither of defendant's arguments on appeal is sufficient to undermine the confidence in the outcome. Defendant has not demonstrated how his counsel's alleged deficiency affected the jury's decision to find him guilty after the jury was presented with the overwhelming evidence that he was intoxicated.

Lastly, defendant argues that defense counsel should have moved to include the jury instruction as requested when it was clear that the trial court had not provided the instruction. Even though the decision whether to inform a jury that the defendant has a right not to testify is a matter of trial strategy because a defendant may wish to avoid highlighting that he did not testify, see *People v Hampton*, 394 Mich 437, 438; 231 NW2d 654 (1975), it is apparent that the omission in this case was an oversight because defense counsel had requested the instruction. Defense counsel's performance, however, will be deemed to have prejudiced defendant only if it is reasonably probable that, but for any error, "the result of the proceeding would have been different." *Jordan*, 275 Mich at 667. As discussed, the trial court instructed the jury that defendant was innocent and did not have to do anything to prove that innocence, and this guarded against any risk that the jury would view defendant's decision not to testify as an inference that he was guilty. Moreover, defendant has not shown that but for defense counsel's failure to remind the trial court to include the requested jury instruction, the result would have been different.

## III. CONCLUSION

Defendant's arguments concerning prosecutorial error are misplaced because the witnesses often offered their testimony unsolicited. Even though defendant had the constitutional right to confront House, defendant waived that right by not objecting to the admission of the report. And even though the jury instruction that defendant requested was not included by the trial court, the entirety of the instructions did not undermine the reliability of the verdict. Further, defendant has

not shown that but for defense counsel's alleged failures, the result would have been different when considering all of the evidence in this case.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel